**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis Edward BAKER, Defendant-
Appellant.**

**No. 15076.**

United States Court of Appeals
Seventh Circuit.

March 18, 1966.

J. Frederick Hoffman, Louis Pearlman, Jr., Lafayette, Ind., for appellant.

Richard P. Stein, U. S. Atty., James Manahan, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This appeal is from a judgment based upon a jury verdict which found defendant guilty of bank robbery under 18 U.S.C. § 2113(a). A nine-year prison sentence was imposed. Defendant was permitted to appeal to this Court in *forma pauperis* and counsel was appointed to represent him on this appeal.

The indictment below charged that defendant and one James Stanley Pipes had robbed the Brightwood office of the Merchants National Bank and Trust Company of Indianapolis, Indiana, of $20,900.

Upon arraignment, defendant requested that counsel be appointed to represent him. The Court appointed John Frost, Esq. of the Indianapolis bar who promptly demanded a separate trial. The District Court granted this motion. Co-defendant Pipes was tried first and found guilty. Some of the witnesses who had testified for the Government in the Pipes' trial also testified for the Government in Baker's trial.

This appeal is based upon claimed violations of the Jencks Act, 18 U.S.C. § 3500 that occurred during Baker's trial. The pertinent parts of the statute follow:

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"* * *

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

At Baker's trial, the Government called Pipes as a witness, but he refused to testify on the ground of self-incrimination.

Linda Wright, a teller at the bank, testified and identified Pipes and the defendant as the bank robbers. The defendant's attorney demanded a copy of her testimony from the prior Pipes trial for the purpose of cross-examining the witness, pursuant to the Jencks Act. This request was denied because the stenographic notes taken at the Pipes trial had not been transcribed. The same demand was made during the testimony of Joanna Davis, another teller, who identified the defendant. The demand was repeated during the testimony of Laura Cortrecht, a third teller, and of Robert Grimes, an assistant manager of the bank. These demands were denied because such stenographic notes were unavailable.

Defendant has not cited any precedents for his claim that he is entitled to transcripts of testimony given in the Pipes case by Government witnesses who later testified against him in this case. We know of none.

■ A transcript of a witness' testimony in a prior trial does not come within the language of the Jencks Act. We doubt that a court reporter falls within the category of "an agent of the Government." This would be tantamount to construing that language as meaning "Government employees." A federal commissioner or indeed, a federal judge, might be said to be an employee of the Government, but it hardly could have been Congress' intent that a judge's shorthand notes or a transcript thereof, would have to be produced upon demand.

■ But, assuming a court reporter in a separate trial does come within the wording of the Act, in the instant case there was no request or demand by defendant's counsel for such transcript prior to the trial.

■ The Government has no obligation to transcribe stenographic notes of testimony in a criminal trial just in case some of the witnesses might be later called upon to testify in a related trial. Such a practice would create a heavy, and in our opinion, unnecessary burden.

■ We hold that under these circumstances of the instant case, in the absence of a demand or request for such a transcript prior to the trial, and a showing that a defendant was unable to pay the court reporter for such a transcript, the Government had no duty to have such transcripts available. We hold there was no error in this respect.

Irvin Liggons was called as a witness for the Government. He testified he was a friend of both Baker and Pipes and had traveled with them to several cities shortly prior to the date of the bank robbery. On cross examination, defendant's counsel ascertained that Liggons had spoken to several federal investigators and that on two occasions they had taken notes during the conversation. Defendant's counsel then made a motion in the following language: "Your Honor, just for the record, I move to strike all of the testimony given by Mr. Liggons in this case in view of the fact that the government has not supplied me with all statements in its possession relating to the subject matter in this case."

The trial judge responded and stated that the record showed that two documents had previously been furnished to defendant's counsel by the attorney for the Government. One was a typewritten six and a half page, single-spaced paper which purported to contain minutes of an interview with witness Liggons on July 20, 1964, and an exact copy of the signed statement of witness Liggons. The other so-called document consisted of a one and a half page typewritten paper which purported to be a summary of a statement or statements made by the witness Liggons.

The trial court ruled defense counsel had been given sufficient records pertaining to the recorded interviews with Government investigators to satisfy the requirements of the Jencks Act, but ordered that the original signed statement of Liggons should be given to defense counsel before the end of the trial so that he could determine whether the purported copy of Liggons' signed statement was indeed a verbatim copy.

Immediately prior to the end of the trial, defense counsel was given the original statement signed by witness Liggons and he expressed his satisfaction with the information which had been provided him for conducting his cross-examination.

There is nothing in the record of this case to indicate that any handwritten notes made by the agents existed at the time of the trial. In fact, every indication is to the contrary. The evidence discloses that it is the practice of Federal Bureau of Investigation Agents to discard all handwritten notes after the subject matter of the notes has been typed.

In United States v. Comulada, 2 Cir., 340 F.2d 449, 451, cert. den. 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272, the Court said:

"There is nothing in 18 U.S.C. § 3500 which requires that all memoranda made in the course of an investigation

should be kept and preserved. Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); United States v. Greco, 298 F.2d 247, 250 (2 Cir.) cert. denied 369 U.S. 820, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962); United States v. Thomas, 282 F.2d 191, 194 (2 Cir. 1962). Indeed, every consideration of efficiency and economy would seem to require the destruction of such fragmentary memoranda as soon as they are no longer needed."

In Alexander v. United States, 118 U.S. App.D.C. 406, 336 F.2d 910, a police officer had made a pencilled draft of a report. The stenographer at headquarters made a typewritten copy which was produced at the trial. The officer testified the pencilled draft " * * * probably went in the trash after the clerk typed it." The Court pointed out that the only objective of a hearing would have been to determine whether the throwing of the pencilled notes into the trash had been in bad faith and not in the normal course. The Court held that the trial judge did not commit reversible error in failing to initiate a hearing.

In Ogden v. United States, 9 Cir., 303 F.2d 724, 740–741, where it was claimed there was a violation of the Jencks Act, the Court said: " * * * [W]e are not to reverse unless the 'substantial rights' of the defendant have been affected. * * * As we have noted, the availability of the same information from another source is said to render harmless the erroneous failure to produce the whole of a Jencks Act statement * *."

In the case at bar, defendant's trial counsel was provided not only with Liggons' signed statement which resulted from the interviews, but he also was provided with the six and a half page recitation of the minutes of the interview which preceeded the formulating of the statement. Also, defendant's counsel made no contention that the agents' pencilled notes were still in existence.

█ While it would be the safer course for trial judges to actually make inquiry as to the existence of preliminary or "scribbling notes," we hold that under the circumstances of this case, the failure to do so was not reversible error.

On this appeal, J. Frederick Hoffman, Esq. of the Lafayette, Indiana, bar was court-appointed counsel for defendant-appellant. We wish to thank Mr. Hoffman for his able presentation to this Court, both in his briefs and in oral argument.

Judgment affirmed.