UNITED STATES

v.

**Paul A. GIUSTI, Boatswain's Mate Third Class, U.S. Coast Guard.**

CGCM 9974.
Docket No. 859.

U.S. Coast Guard Court of
Military Review.

3 June 1986.

Trial Counsel: LCDR J.K. Waldron, USCG.

Assistant Trial Counsel: LT Dave L. Brannon, USCG.

Individual Military Counsel: LCDR Richard A. Knee, USCG.

Civilian Defense Counsel: Mr. David B. Mankuta.

Appellate Defense Counsel: LCDR R.W. Ferguson, USCG, LT Keith M. Harrison, USCGR, CDR Stephen L. Swann, USCG, LCDR Robert Bruce, USCG.

Appellate Government Counsel: LT C.G. Green, USCGR, LCDR Thomas J. Donlon, USCG.

## DECISION

BAUM, Chief Judge:

Appellant was convicted, contrary to his pleas, of ten specifications of marijuana use and possession under Article 92, Uniform Code of Military Justice and seven specifications, by exceptions and substitutions, of dereliction of duty under the same Article by using marijuana while serving as coxswain in command of a U.S. Coast Guard vessel underway. He was sentenced to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $382 per month for six months, and reduction to E–1. The findings and sentence were approved below and are chal-

lenged by appellant before this Court in six assignments of error.

The first assignment asserts error by the military judge for failure to suppress testimony in violation of the Jencks Act, 18 U.S.C. § 3500. In that regard, appellant, at trial, moved to suppress the testimony of an undercover agent who was the key Government witness. The basis for the motion was the Government's failure to provide appellant with complete, understandable tape recordings of that agent's testimony given at the investigation convened in accordance with Article 32, Uniform Code of Military Justice to determine whether a general court-martial was warranted. The pretrial investigating officer thought he was tape recording the proceedings, but it was later discovered that several of the tapes were either blank or garbled, leaving a significant gap in the recorded testimony of the special agent. Appellant acknowledges that there was no requirement to record the Article 32 investigation testimony verbatim,[1] but asserts that once the project was undertaken, the Government's failure to produce complete tapes that could be understood was a violation of the Jencks Act requiring suppression of the witness's testimony. He also argues that the evidence indicates one of the tapes produced has been lost by the Government.

The "so-called" Jencks Act, can be found in 18 U.S.C. § 3500 and provides, in part, as follows:

**Demands for production of statements and reports of witnesses**

   . . . .

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness

has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

   . . . .

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

   (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

   (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

   (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

After hearing testimony on the availability and condition of the tape recordings and any written transcripts, the military judge denied the motion, finding that there was not a recording at the end of the investigation that could have been used and, even if there was, the good faith loss exception to the Jencks Act remedy of striking the witness's testimony pertains. In any event, the military judge did not believe the

---

1. Article 32, Uniform Code of Military Justice, in subsection (b) provides: "If the charges are forwarded after the investigation, they shall be accompanied by *a statement of the substance of the testimony* taken on both sides and a copy thereof shall be given to the accused." [Emphasis added]. This provision was first enacted in 1950 as part of the original Uniform Code of Military Justice and remains unchanged through successive amendments to this date.

Jencks Act applied to the situation with which he was confronted.

At the time of the judge's ruling, the court of Military Appeals had not decided whether the Jencks Act covered testimony presented at an Article 32 investigation in the presence of the accused and his counsel. The other Courts of Military Review had held the Jencks Act applicable in such situations, but the Coast Guard Court of Military Review had not addressed the question. On March 31, 1986, the United States Court of Military Appeals in *U.S. v. Marsh*, 21 M.J. 445 (C.M.A.1986) confronted the issue and found the conclusion of Jencks Act applicability by the other Courts of Military Review justified "on the basis of the broad language of the statute in its amended form (*see generally United States v. Calley*, 46 C.M.R. 1131, 1191–93 (A.C.M.R.1973), *aff'd on other grounds*, 22 U.S.C.M.A. 534, 48 C.M.R. 19 (1973)); its express inclusion in section (e)(3) of statements to a grand jury; and its failure expressly to except statements made in the presence of the accused and his counsel." *Id.* at 451.

This Court, not having dealt with the subject before, takes this opportunity to note certain reservations. We do not believe the express inclusion within the Jencks Act of statements to a grand jury—a secret proceeding without accused and counsel present—necessarily leads to the conclusion that Article 32 investigations are also included within the Act. There are many differences between a grand jury and an Article 32 investigation, not the least of which is the open nature of the latter, with accused and counsel present throughout as active participants in the development of evidence and cross examination of witnesses. Moreover, broad legislative language and the failure of Congress to expressly except statements made in the presence of the accused and counsel should not, in our view, impel a finding of coverage by the Act, if the legislative history indicates otherwise. We urge the Court of Military Appeals to examine again at the first opportunity the holding in *Marsh, supra*, and reconsider whether the Jencks Act properly should apply to testimony at an Article 32 investigation in the presence of an accused and counsel.

At that time, scrutiny might be given to the initial Supreme Court decision on this issue and the Congressional action which followed. *Jencks v. United States*, 353 U.S. 657, 668, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103 (1957), the landmark case which provided the impetus and the name for the legislation that emerged, involved defense requests for reports given by the principal prosecution witnesses to government agents while the witnesses were acting as paid government informers of domestic communist activities in the late 1940's. The contents of the statements were not provided the accused and his counsel and the trial judge denied a defense motion to inspect the documents. The Court of Appeals upheld that denial on the ground that the defense had not shown an inconsistency between the testimony and the statements' contents. The Supreme Court found that "the accused is helpless to know or discover conflict without inspecting the reports." *Id.* 353 U.S. 668, 77 S.Ct. 1013. Accordingly, it held that the criminal action must be dismissed when the Government elects not to produce for the accused's inspection and for admission in evidence such relevant witness statements touching the subject matter of the witness's testimony at trial. These facts are a far cry from the situation posed in the instant case or in any case where the defense requests transcripts or recordings of testimony given in the presence of accused and counsel.

The legislative history of the Act which followed indicates that Congress intended to limit the reach and effect of the decision in *Jencks v. United States, supra*. Congress had already enacted the Uniform Code of Military Justice some seven years earlier with its previously noted Article 32 provision establishing the military requirement for an investigation of charges and its panoply of accused's rights at that investigation, including the right to "a statement of the substance of the testimony taken...." If a re-examination of Jencks

Act applicability to such an investigation is undertaken, we believe consideration should be given to the possibility that Congress did not intend 18 U.S.C. § 3500 to override Uniform Code of Military Justice procedures in this area, intending, instead, for Article 32 (10 U.S.C. § 832) to be sufficient unto itself, standing outside the reach of the later *Jencks* induced legislation. If the subject is looked at anew, it is also suggested that consideration be given to treating recordings and transcripts of Article 32 investigation testimony in the same manner as recordings and transcripts of testimony from a prior trial. In our view, those two proceedings are more akin to each other than either is to a grand jury.[2]

Whatever the outcome, the reservations we have noted should not be construed to mean that this Court believes an accused should be denied access to tape recordings of Article 32 investigations when such recordings have been made and the accused requests them. We are simply advancing the proposition that such recordings may not fall within the mandate of 18 U.S.C. § 3500, with its certain and drastic remedies of striking pertinent testimony or declaring a mistrial when these recordings are not provided. If the Jencks Act is not controlling with respect to the Article 32 investigation, then trial judges and appellate courts would be free to apply other standards when confronted with Government failure to provide requested transcripts/recordings and to fashion other remedies for such failures, as warranted. In any event, it is clear that until such time as the Court of Military Appeals should change its position on this matter, we are bound by the holding in *U.S. v. Marsh, supra*.

▪ Starting from the premise that the Government was required to furnish the defense with the tape recordings of the undercover agent's Article 32 testimony, we must look at what transpired below. According to the trial counsel's argument

at trial and the Government's reply to appellant's amended assignment of error, all the available tapes of that agent's testimony had been surrendered for defense examination. Accordingly, it appears that the appellant is left with two distinct arguments based on the facts of the case: (1) that the Government's failure to produce complete, understandable tape recordings of this key government witness because of negligence or incompetence in operating the tape recorder requires invocation of the Jencks Act and (2) that the evidence considered by the judge provides clear proof that a tenth tape that was recorded has been lost through unexplained Government ineptness. As to the latter contention, we do not view the evidence in the same light as appellant. We conclude from the evidence that only nine tapes were made and that none has been lost. With regard to appellant's first argument concerning the Government's negligence in failing to properly record the testimony, we are convinced, as was the Army Court of Military Review in *U.S. v. McDaniel*, 17 M.J. 553 (A.C.M.R.1983), that the Jencks Act requires only that the Government provide the defense with tape recordings that exist and are in the Government's possession. It does not impose a duty on the Government to create the recording in the first place. Any negligence at the hands of the Government in failing to properly record the testimony does not fall with the purview of the Jencks Act. The appellant's first assignment of error is rejected.

▪ In his second assignment of error appellant contends that the dereliction of duty offenses are multiplicious for findings with marijuana possession and use offenses which occurred on the same days. He also asserts that hazarding a vessel specifications, with which appellant was charged and acquitted, were unreasonably multiplicious for charging purposes. With respect to the latter position, we believe it is clear that multiplicious offenses may be

---

**2.** *See U.S. v. Toledo,* 15 M.J. 255, 257 (C.M.A. 1983) (Everett, C.J., concurring) where it was said that, "[I]t is well-established that the Jencks

Act, 18 U.S.C. § 3500, does not include a transcript of a witness' testimony in a prior trial."

charged to allow for contingencies of proof. *U.S. v. Drexler*, 9 U.S.C.M.A. 405, 26 C.M.R. 185 (1958). That was done in this case and appellant was acquitted of the hazarding offenses when the proof fell short. Trial was by judge alone and appellant acknowledges that the judge at the outset correctly determined the hazarding and use/possession specifications were multiplicious for sentencing. Accordingly, there was no prejudice to the accused from charging him with hazarding a vessel. As to the ultimate convictions by exceptions and substitutions of dereliction of duty as coxswain of a boat for using the same marijuana alleged in use/possession specifications, we agree with appellant that these offenses are multiplicious for findings purposes. As a result, we will dismiss the dereliction specifications and reassess the sentence based on the remaining use/possession findings of guilty. In light of our action with respect to the multiplicity assertion, the issue raised in assignment of error IV that the judge erred by finding appellant guilty of dereliction of duty is mooted and will not be addressed. The remaining assignments of error have been considered and are rejected.

In light of the foregoing, the findings of guilty of Charge II and the seven specifications thereunder are set aside and dismissed. The remaining findings of guilty of Charge I and the ten specifications thereunder are affirmed. Upon reassessment of the sentence in light of the affirmed findings, we deem the sentence for those offenses appropriate. Accordingly, the sentence as approved below is affirmed.

Judges BRIDGMAN and BURGESS concur.*

* Judges HOLLAND and REINING did not participate in the decision in this case.